1

2

3

4

5

6

7                                   NOT FOR CITATION

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                                  SAN JOSE DIVISION

11

12   RICHARD HENNING,                          Case No.  5:12-cv-06146 HRL

13                Plaintiff,                    **ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANTS'**
14         v.                                  **MOTION FOR SUMMARY
                                               JUDGMENT; GRANTING**
15                                             **PLAINTIFF'S MOTION FOR LEAVE
     FRY'S ELECTRONICS, INC.;                  TO FILE SURREPLY PAPERS**
16   FAIRNBARG I LP, and DOES 1-20,
                                               [Re:  Dkt. 38, 46]
17                Defendants.

18         Plaintiff Richard Henning sues under Title III of the Americans with Disabilities Act

19   (ADA), 42 U.S.C. § 12181, et seq., alleging that architectural barriers at the Fry's Electronics

20   (Fry's) store in Campbell, California prevented him from enjoying full and equal access at the

21   facility.  He also asserts a number of state law claims for relief.  Henning says he suffers from

22   peripheral neuropathy in all four extremities and requires the use of a walker or walking poles for

23   mobility.  Additionally, he says he has diabetes, with a history of diabetic coma, and equilibrium

24   problems.  According to his complaint, he visited Fry's several times between August and October

25   2012 and encountered 20 alleged barriers which made the store inaccessible to mobility-impaired

26   disabled persons.

27         Defendants now move for summary judgment, arguing that under Oliver v. Ralphs

28   Grocery Co., 654 F.3d 903 (9th Cir. 2011), the only barriers that properly are at issue in this

United States District Court
Northern District of California

United States District Court
Northern District of California

lawsuit are those that plaintiff identified in his complaint.  Additionally, defendants contend that the purported barriers alleged in the complaint are either not ADA barriers or have been corrected (thus, mooting plaintiff's claims), or are matters which plaintiff has no Article III standing to pursue.  Because there are, in defendants' view, no ADA violations that can be remedied, defendants request dismissal of the ADA claims and ask the court to decline to exercise supplemental jurisdiction over plaintiff's state law claims.  Plaintiff opposes the motion.  All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Upon consideration of the moving and responding papers,[1] as well as the arguments of counsel, this court grants the motion in part and denies it in part.[2]

## LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In

---

[1]  Plaintiff's motion for leave to submit sur-reply papers is granted.  In their opposition to that motion, defendants misinterpret Civil Local Rule 7-3(d).  They contend that the rule limits sur-replies to (1) objections to new evidence and (2) papers informing the court of a relevant judicial opinion published after the date the opposition or reply was filed.  In fact, those are the two kinds of supplementary material that may be submitted "*without* prior Court approval." Civ. L.R. 7-3(d) (emphasis added).  Here, plaintiff seeks the court's permission to file supplementary material falling outside these two categories.  This court, in its discretion, grants that request.

[2] Defendants' evidentiary objections to Exhibits A and B appended to plaintiff's opposition are sustained.  Fed. R. Evid. 901.  Defendants' evidentiary objection to the statements asserted in plaintiff's opposition brief on page 1, lines 13-14 is sustained inasmuch as those assertions are based on the unauthenticated Exhibit A to the opposition.  Defendants' objection to statements made in plaintiff's opposition brief at page 2:24-3:14 is sustained.  Fed. R. Evid. 403.

Plaintiff objects to several arguments made by defendants in their briefs on the grounds that they are misleading.  The court is capable of distinguishing between arguments and evidence and to determine whether the arguments accurately reflect the record presented.  Plaintiff's objections are therefore overruled as to defendants' Reply pp. 7:27-28; 8:7-8; 9:8-10.  As for the remainder of plaintiff's evidentiary objections, they are addressed in this order only to the extent the court finds it necessary to the resolution of this motion.

2

order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. See Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See id. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. Id.

## DISCUSSION

### A. The Ninth Circuit's Decision in Oliver

Preliminarily, defendants contend that Oliver makes clear that the only barriers properly at issue are those identified in a complaint, and not those listed elsewhere. In Oliver, the Ninth Circuit upheld the district court's decision not to consider alleged barriers that were not identified in the plaintiff's complaint, relying upon the notice pleading requirements of Fed. R. Civ. P. 8:

> Where the claim is one of discrimination under the ADA due to the presence of architectural barriers at a place of public accommodation, we have held that the relevant "grounds" are the allegedly non-compliant architectural features at the facility. Thus, in order for the complaint to provide fair notice to the defendant, each such feature must be alleged in the complaint.

Id. at 908 (citing Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968 (9th Cir. 2006)). In so

United States District Court
Northern District of California

holding, the court stated that "[i]n general, only disclosures of barriers in a properly pleaded complaint can provide such notice; a disclosure made during discovery, including in an expert report, would rarely be an adequate substitute." Id. at 909. Thus, "for purposes of Rule 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself; a defendant is not deemed to have fair notice of barriers identified elsewhere." Id.

In Oliver's wake, a number of courts in this circuit and in this district have concluded that "[i]n barrier removal cases, an ADA plaintiff may prevail only with respect to barriers alleged in the operative complaint." Hernandez v. Polanco Enters., Inc., --- F. Supp.2d ---, No. 11-cv-02274 YGR, 2013 WL 4520253 at *4 (N.D. Cal., Aug. 23, 2013) (citing cases). Indeed, the Polanco court's "research into California district court cases applying Oliver revealed that, outside of the class action context, they have thus far uniformly interpreted Oliver to bar claims based on barriers not fairly reflected in an operative complaint." Id. at *7 (collecting cases).

Henning argues that Oliver is at odds with the Ninth Circuit's earlier decisions in Doran v. 7-Eleven, Inc., 524 F.3d 1034 (9th Cir. 2008) and Chapman v. Pier 1 Imports (U.S.), Inc., 631 F.3d 939 (9th Cir. 2011) (en banc), which essentially held that where a plaintiff establishes standing to pursue at least one barrier related to his specific disability, then he can sue to remove all barriers at the facility related to his disability. Courts, including Oliver, however, have distinguished Chapman and Doran on the grounds that those decisions addressed constitutional issues of standing, not pleading requirements. See, e.g., Polanco Enters., Inc., --- F. Supp.2d ---, 2013 WL 4520253 at *7.

Pointing out that the plaintiff in Oliver deliberately delayed disclosure of the alleged barriers, Henning contends that the holding in that case was the result of a "very extraordinary set of facts" which are not present here. (Opp. at 15.) True, there is no indication that Henning deliberately delayed disclosure of the additional claimed barriers. Even so, at some point after Henning's expert report was served in April 2013, plaintiff apparently believed that it was necessary to amend his complaint to include the additional alleged barriers identified only in that report. But, it was not until May 2014 that he sought defendants' stipulation to the filing of an

4

1   amended complaint.  (They refused.)  Although he had ample opportunity to do so, at no time did

2   Henning ever seek leave to amend.  Accordingly, the court concludes that the only alleged barriers

3   properly at issue are those that Henning identified in his complaint.

4        The court now turns its attention to defendants' arguments as to each of those claimed

5   barriers.

6   **B.  Alleged Barriers Identified in Henning's Complaint**

7        At the threshold, defendants argue that plaintiff's complaint is merely a laundry list of alleged

8   barriers and therefore insufficiently alleges, for Article III standing purposes, that he suffered an

9   injury in fact.  "Under the oft-repeated standing formulation," Henning "must demonstrate that he

10  has suffered an injury-in-fact, that the injury is traceable to the Store's actions, and that the injury

11  can be redressed by a favorable decision."  Chapman, 631 F.3d at 946.  A disabled person who has

12  encountered barriers impeding full access to a place of public accommodation may show standing

13  to pursue injunctive relief by proving either deterrence from returning to the premises or an injury-

14  in-fact coupled with an intent to return.  Id. at 944.  Courts are to take a broad view of

15  constitutional standing in disability access cases.  Id. at 946.

16       The plaintiff in Chapman merely listed alleged barriers without identifying which ones he

17  encountered or how they affected his specific disability.  Although he does not include detailed

18  allegations as to each and every alleged barrier, Henning does generally describe the barriers he

19  encountered at Fry's, particularly in the parking lot, and how they affected his mobility.  (See, e.g.,

20  Complaint ¶¶ 1, 8-10).  He further alleges that these alleged barriers will foreseeably cause him

21  difficulty if he returns to the store and its parking facilities before they are made fully accessible.

22  (Id. ¶ 11).  Viewing the complaint as a whole, and taking a broad view of constitutional standing,

23  the court concludes that he has provided more than a mere laundry list.

24       **1.  Barriers unrelated to plaintiff's disability**

25       Nevertheless, Henning has standing to sue only for ADA violations that are related to his

26  specific disability.  See Chapman, 631 F.3d at 949 ("Article III, however, requires a sufficient

27  showing of likely injury in the future related to the plaintiff's disability to ensure that injunctive

28  relief will vindicate the rights of the particular plaintiff rather than the rights of third parties.").

United States District Court
Northern District of California

5

Defendants contend that Henning does not have standing to sue as to four of the alleged barriers pertaining to truncated domes because they relate to someone with visual disabilities.  Those four items are identified in the complaint as follows:

- No. 7:  "No truncated domes to alert a person when crossing car right of way";

- No. 10  "Pair of Parking at rear area; has no truncated domes when crossing a party of travel";

- No. 18:  "Single parking at back area has no truncated does [sic] when crossing vehicular path"; and

- No. 19:  "Path of travel at back area has no truncated domes separating it from vehicular way."

(Complaint ¶ 10).  Henning had visual issues in the past, for which he had corrective surgery. (Phillips Decl. ¶ 4, Ex. A).  He does not, however, claim any vision-related disability.  Nor does he refute defendants' arguments that these four alleged barriers do not relate to his specific disability. Defendants' motion as to these claimed barriers therefore is granted.

### 2.  Alleged barriers that have been remedied

Defendants present evidence that four other claimed barriers have been corrected. (Blackseth Decl. ¶¶ 15-17; Robins Decl. ¶¶ 8-10).  The complaint identifies those items as follows:

- No. 6:  "Stairs do not have contrasting lines in the area of covered parking (only top and low, must be all steps for exterior steps)";

- No. 13:  "Back area entrance door; has no ADA sign";

- No. 14:  "Back area entrance door; has no 10" smooth surface at the bottom"; and

- No. 20 "Water fountain inside not compliant."

(Complaint ¶ 10).  Plaintiff presents no evidence or argument to the contrary.  Accordingly, defendants' motion is granted as to these claimed barriers.

With respect to Item No. 4 ("Access aisle on covered parking has a slope"), defendants contend that this alleged barrier is moot because all of the accessible parking spaces previously located in the covered parking areas under Fry's have been relocated to the front of the store.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   (Blackseth Decl. ¶ 16; Robins Decl. ¶ 9).  Plaintiff having presented no evidence or argument to

2   the contrary, defendants' motion is also granted as to Item No. 4.

3          Item No. 15 concerns Fry's entrance door operating pressure ("Back area entrance door;

4   appears to be heavier than 5 lbs to operate").  (Complaint ¶ 10).  Plaintiff says that as of August

5   29, 2014, the door operating pressure was 7 lbs., whereas the maximum allowed pressure is 5 lbs.

6   (Atwal Decl. ISO Opposition, ¶ 16).  In reply, defendants present evidence that the door pressure

7   was adjusted to 5 lbs. on September 8, 2014.  (Robins Reply Decl. ¶ 3, Ex. A).  Henning objects

8   on the ground that the proffered invoice for this work does not actually say that the door pressure

9   was adjusted.  However, Kevin Robins, Fry's Director of Construction and Energy, attests that

10  Fry's contractor performed that work, and the invoice says that the contractor "inspected closers

11  for proper ADA compliant standards and all working well."  (Id.).  Plaintiff's evidentiary

12  objection to this portion of Robins' reply declaration and the appended Exhibit A is overruled.

13  Defendants' motion is granted as to this claimed barrier.

14         Item No. 16 concerns "Single parking at back area has no directional signage."  (Complaint

15  ¶ 10).  Defendants point out that all accessible parking at the back area has been removed and

16  modified; and, their expert opines that the path of travel from the accessible parking is clearly

17  marked and visible and no directional signage is required.  (Blackseth Decl. ¶ 13, Ex. B at 10;

18  Blackseth Reply Decl. ¶ 15).  Plaintiff has not presented evidence to the contrary, and does not

19  even address the directional signage issue at all.  Defendants' motion is granted as to Item 16.

20         **3.  Remaining alleged barriers**

21         Certain barriers concern the parties' disagreement whether Fry's is obliged to provide an

22  accessible path of travel from a so-called "back area" between Fry's and a car stereo installation

23  building.  The underlying issue appears to be whether this area constitutes a "vehicular way not

24  providing pedestrian access" under ADA regulations.  If so, then defendants claim that this area

25  falls within an exception to regulations requiring an accessible path to Fry's entrance.  See 36

26  C.F.R. Pt. 1191 app. B, § 206 re Accessible Routes.  Although this appears to present a legal

27  question, defendants' motion is denied because they have not provided the court with sufficient

28  information to determine whether, as a matter of law, the regulation (or any of its exceptions)

apply.  As for the other remaining alleged barriers, the parties' respective experts disagree over the methodologies and measurements taken by the other; whether certain items truly are "temporary" disruptions for maintenance matters; and whether other items fall within accepted construction tolerances.  Resolving these disputes will require crediting the testimony of one expert over the other, and the court cannot properly weigh credibility at the summary judgment stage.  Accordingly, defendants' motion is denied as to alleged barrier Item Nos. 1-3, 5, 8-9, 11-12, and 17.

### C.  Alleged discriminatory seating policy

In his opposition papers, plaintiff argued that Fry's has a discriminatory policy of not providing "a place to sit down for disabled people."  (Opp. at 13:23-24).  According to his complaint, Fry's must adopt a policy that would "allow mobility disabled persons to sit rather than stand while waiting in a checkout line."  (Complaint ¶ 1).

Henning's allegations stem from his September 6, 2012 visit to Fry's to purchase a 60-inch television.  While on the sales floor in the television department, Henning says that he asked a salesperson, Mr.Chamaki, for a chair.  Henning claims that Chamaki (who was also helping other customers at the time) did not get a chair, but acknowledged that there was a demo massage chair down an aisle in an adjacent department to sit on.  (Henning Decl. ¶ 8, Ex. B (Henning Depo. at 41-42), Ex. C).  After he finished assisting the other customers, Chamaki showed plaintiff to the checkout counter to make his purchase.

Henning's sales transaction took longer than he expected because he was buying the television on credit and had to complete a financing application.  Additionally, Fry's was experiencing computer problems that day.  Plaintiff, who says he began to feel weak, boosted himself up to sit on the checkout counter.[3]  (Henning Decl. ¶ 9, Ex. D).  He requested a chair[4] and

---

[3] Defense counsel avers that, in deposition, plaintiff testified that on a subsequent visit, he boosted himself up onto the Fry's checkout counter because "it was fun."  (Phillips Reply Decl. ¶ 4).  Plaintiff's objection to that statement is sustained because defense counsel misquotes the cited portion of plaintiff's deposition testimony and also mischaracterizes it.  Plaintiff did not say that it was fun to sit on the counter.  He was asked why, on a subsequent visit to the store, he had his attorney take a picture of him sitting on the checkout counter.  He responded, "Just for fun," although plaintiff now says he was being sarcastic.  (Henning Sur-Reply Decl. ¶ 7).  In any event, the gist of plaintiff's deposition testimony is that he had that picture taken to show his counsel

United States District Court
Northern District of California

eventually was provided one after about 45 minutes, which is not as quickly as he claims is required under the ADA. By that time, plaintiff says that he was put "on a phone to answer stupid credit questions," and that the checkout "line grew to 25-30 people watching me as I was now getting very angry and making a scene."[5]   (Henning Decl. ¶ 8, Ex. C).  He claims that Chamaki laughed when he (Henning) said that he could not wait much longer and that Chamaki might need to have a phone handy to call 9-1-1.  Ultimately, plaintiff says that he felt too ill to stay at the store; so, he left without completing the sales transaction.

Title III of the ADA contains a general prohibition against discrimination in public accommodations and provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a); see also Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  To establish discrimination under Title III, Henning must show that (1) he is disabled as defined by the ADA; (2) Fry's is a private entity that owns, leases, or operates a place of public accommodation; (3) Fry's employed a discriminatory policy or practice; and (4) Fry's discriminated against Henning based upon Henning's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate his disability.  Fortyune, 364 F.3d at 1082.

For purposes of this motion, it is not disputed that Henning is a disabled person as defined by the ADA; that Fry's is a place of public accommodation; and that the requested modification (a chair) was necessary.  Fry's nevertheless contends that it is entitled to summary judgment because Henning has no evidence of any discriminatory policy.  Indeed, Henning has not presented any

_____

how he was sitting on the counter on September 6.  (Phillips Reply Decl., Ex. A).

[4] There is some ambiguity as to how many times Henning asked for a chair while at the checkout counter.  In his complaint letter written to Fry's shortly after the September 6 visit, he said he asked for one "a couple times."  (Henning Decl. ¶ 8, Ex. C).  In his declaration submitted on this motion, however, plaintiff says it was more like "six to eight times."  (Id. ¶ 9).

[5] Plaintiff objects to defendants' citation to this statement.  The statement, however, is a direct quote from plaintiff's own email, which he submitted as an exhibit to the court on this motion. His objection is overruled.

United States District Court
Northern District of California

9

evidence of a policy, written or otherwise.  Moreover, Fry's says that it has no discriminatory policy re seating and that it does not ordinarily provide seating for any patron because its business is to provide services for customers to shop, not to sit.  Defendants' retained expert, Kim Blackseth, also avers that the ADA does not require retail stores to provide seating for customers. (Blackseth Reply Decl. ¶ 37).  Plaintiff objects that Blackseth is not qualified to render such an opinion, but the court sees no need to resolve that objection here.  At oral argument, plaintiff acknowledged that there is no provision in the ADA that specifically requires a store like Fry's to provide seating for disabled patrons.

Instead, plaintiff clarified that he is claiming that, under the particular circumstances as they unfolded during his September 6 visit, Fry's was legally obligated to modify its usual practice of not providing seating for customers by giving him a chair to sit on.  He contends that the failure to do so violated ADA §12182(b)(2)(A)(ii), which essentially requires a defendant to make a reasonable modification when necessary to accommodate an individual with disabilities, unless the defendant demonstrates that the modification would fundamentally alter the nature of its goods, services, facilities, privileges, advantages, or accommodations.[6]  There is no dispute that plaintiff was given a seat both on the sales floor and at the checkout counter.  He nevertheless maintains that Fry's did not give him a seat soon enough.

"Although neither the ADA nor the courts have defined the precise contours of the test for reasonableness, it is clear that the determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it."  Fortyune, 364 F.3d at 1083 (citations omitted).  "The

---

[6] ADA § 12182(b)(2)(A)(ii) defines "discrimination" as including:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

standard for reasonableness under the ADA does not differ from the one employed under the
Rehabilitation Act, 29 U.S.C. § 794."  Id.  Thus, a modification is unreasonable if it imposes
undue financial and administrative burdens.  Id.

Although plaintiff claims that defendant's salesperson was rude, "'[u]nfortunately,
legislation such as the ADA cannot regulate individuals' conduct so as to ensure that they will
never be rude or insensitive to persons with disabilities.'"  Brown v. Whole Foods Mkt. Group,
Inc., 965 F. Supp.2d 132, 137 (D.D.C. 2013) (quoting Stan v. Wal-Mart Stores, Inc., 222 F.
Supp.2d 119, 126-27 (N.D.N.Y. 2000)).  "Defendants cannot guarantee that an individual
employee will not act inappropriately in a particular instance," albeit defendants are required to
ensure that employees are properly trained.  Stan, 222 F. Supp.2d at 127.  Henning makes no
allegation that Fry's failed to properly train its employees.

On the record presented, no reasonable factfinder could conclude that Fry's discriminated
against plaintiff when Chamaki directed him down an aisle to a demo massage chair on the sales
floor.  Although plaintiff says that the chair was in an adjacent department, that chair evidently
was the only one available (Henning Decl. ¶ 8, Ex. B at 42:11-13).  There is no suggestion that
there was any appreciable delay or that plaintiff was denied equal access to the sales floor.
Although he evidently was not happy that Chamaki continued to serve other customers at the same
time, at the motion hearing, plaintiff disclaimed any intent to suggest that he was legally entitled
to be served ahead of everyone else.  As to plaintiff's request for a seat on the sales floor,
defendants' motion for summary judgment is granted.

The crux of plaintiff's claim concerns events at the checkout counter.  At the motion
hearing, plaintiff said that if the checkout process had taken no more than a few minutes, he might
well have been able to support himself with his walking poles without the need for a chair.  By all
accounts, plaintiff's transaction took some time for reasons having nothing to do with his
disability---he was making a large purchase on credit, and Fry's computers were down.  He does
not claim that he should have been able to cut to the front of the line, and he acknowledges that the
ADA does not give him such right.  So, as discussed, plaintiff's claim essentially boils down to
whether Fry's provided him with a chair quickly enough.  On the record presented, the court

United States District Court
Northern District of California

11

concludes that fact issues preclude summary judgment---namely, whether store employees at the checkout counter were indifferent to plaintiff's requests for a chair and ignored him for nearly an hour (as Henning contends) or whether Fry's took plaintiff's request seriously, but under the circumstances, simply could not locate a chair sooner than it did.

### D.  State Law Claims

Because some of plaintiff's ADA claims remain, defendants' motion for the court to decline jurisdiction over his state law claims is denied.

## ORDER

Based on the foregoing, defendants' motion for summary judgment is granted in part and denied in part.

**SO ORDERED**.

Dated:   November 24, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

5:12-cv-06146-HRL Notice has been electronically mailed to:

Anthony Zand     azand@bortonpetrini.com

Irene Lenislav Karbelashvili     irene@irenelawoffice.com

Samuel Lawrence Phillips     sphillips@bortonpetrini.com

Theresa Ilze McFarland     tim@i.frys.com

William H. Curtis     whc@foleymcintosh.com